IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-03252-CNS-SBP

JASON AARON PRESCOTT, individually and as next friend of J.R.P. and J.E.P., minors,

    Plaintiffs,

v.

RICHARD VALDEZ, individually and in his official capacity as Sheriff of Archuleta County, Colorado;
JAMES MARTINEZ, individually and in his official capacity as Deputy Sheriff of Archuleta County, Colorado;
DEREK WOODMAN, individually and in his official capacity as Undersheriff of Archuleta County, Colorado;
WARREN BROWN, in his official capacity as Operations Commander in the Archuleta County Sheriff's Office;
MICHAEL SINDELAR, individually and in his official capacity as a Deputy Sheriff in the Archuleta County Sheriff's Office;
JOHN DOES 1-5, whose actual names are unknown as yet to the Plaintiff; and
JANE DOES 1-5, whose actual names are unknown as yet to the Plaintiff,

    Defendants.

---

**ORDER**

---

**Susan Prose, United States Magistrate Judge**

    Plaintiff Jason Aaron Prescott brings this action in his individual capacity and as next friend of his minor children, J.R.P. and J.E.P., against members of the Archuleta County Sheriff's Office (collectively, "Defendants"). This matter is before the court on Mr. Prescott's motion seeking sanctions against Defendants and their current and former counsel, ECF No. 149 ("Motion for Sanctions"), as well as several motions related to the Motion for Sanctions. *See* ECF Nos. 156 ("Motion to Strike"); 158 ("Motion to Quash") (collectively, "Motions"). The

1

Motions were referred to the undersigned United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1). ECF Nos. 150, 157, 159. The court held an evidentiary hearing in connection with the Motion for Sanctions over the course of two days, hearing nearly twelve hours of testimony and receiving several dozen exhibits. *See* ECF Nos. 170, 173;[1] *see also* ECF Nos. 171, 174.

Having reviewed the parties' briefs, the hearing transcripts and exhibits, and the applicable law, for the reasons below, the court respectfully **DENIES** the Motion for Sanctions, **DENIES as moot** the Motion to Strike, and **GRANTS** the Motion to Quash.

## BACKGROUND

The claims and defenses in this case largely do not factor into the court's consideration of the issues raised in the Motions, and therefore the court recounts only the facts and procedural history pertinent to the Motions.

***Motion for Sanctions.*** On August 1, 2024, Defendants took Mr. Prescott's deposition, which was conducted in a conference room at the offices of Defendants' counsel, the Lane Law Firm, P.C. ("Lane Law Firm"). ECF No. 154-1 ("Prescott Dep.") 3:1-8. In attendance on Plaintiffs' side were Mr. Prescott and his two attorneys, Lisa Ward and Hillary Bernhardt. *Id.* 1:19, 2:2. On Defendants' side were one of their attorneys, Brittney Townsley, their then-attorney, William O'Donnell,[2] and a paralegal for the Lane Law Firm, Sarah Merrill. *Id.* 1:22. Besides Mr. Prescott and counsel for both sides, the only other person attending the deposition in person was a court reporter, Elizabeth Steen. *Id.* 3:1-9.

---

[1] The court ordered a transcript of the evidentiary hearing which was filed in two docket entries at ECF Nos. 183, 184. The court will cite to the portion of the transcript filed at ECF No. 183 as "Tr.I" and the portion filed at ECF No. 184 as "Tr.II".

[2] Mr. O'Donnell withdrew as counsel on March 26, 2025. ECF No. 191.

2

Seemingly unbeknownst to Mr. Prescott and his attorneys, Mr. Prescott's ex-wife, Erika Prescott, and her attorney in a state court case between the Prescotts, Marian Tone, were observing the deposition remotely via a videoconference call on a laptop belonging to Ms. Merrill that was placed on a credenza inside the conference room. *Id.* 2:3-4. Mr. Prescott and his attorneys claim they were unaware of this fact until they received a transcript of his deposition approximately a month later, which read, "Also Present Via Videoconference: Marian Tone Erika Prescott." *Id.*

Mr. Prescott and his attorneys were immediately concerned because, during breaks in the deposition, they remained in the conference room and engaged in privileged conversations, which they fear Ms. Prescott and her attorney heard via the laptop in the conference room. ECF No. 149-1 ¶ 24. Mr. Prescott believes that all this was "intentional and premeditated and was designed in such a way" as to prevent Mr. Prescott and his attorneys from knowing that Ms. Prescott and her attorney were listening in. Motion for Sanctions at 2. Through his Motion, Mr. Prescott asks the court to enter a default judgment against Defendants on the issue of liability as a sanction for Defendants' conduct and that of their counsel, along with an award of "attorneys' fees incurred as a result of this behavior[.]" *Id.* at 18-19. Defendants denied these allegations in their written response to the Motion and supporting affidavits, *see generally* ECF Nos. 151, 151-4, 151-5, prompting this court to set an evidentiary hearing. ECF No. 152. The evidentiary hearing spanned two full days—November 12 and 15—and the court heard approximately twelve hours of witness testimony from Mr. Prescott, Ms. Ward, Ms. Bernhardt, Mr. O'Donnell, Ms. Townsley, Ms. Merrill, and Ms. Steen. *See generally* Tr.I; Tr.II.

***Motion to Strike.*** Mr. Prescott's Motion to Strike asks the court to strike paragraphs 4,

3

10, 12, and 13 of Ms. Merrill's affidavit, ECF No. 151-4, as well as paragraphs 9, 11, 13, and 14 of Mr. O'Donnell's affidavit, ECF No. 151-5, that were submitted in support of Defendants' response, ECF No. 151, to the Motion for Sanctions. Mr. Prescott argues that these paragraphs of the respective affidavits cannot be based on personal knowledge and therefore must be stricken. Motion to Strike at 1. Defendants argue that the Motion to Strike is now moot because Ms. Merrill and Mr. O'Donnell testified at the evidentiary hearing. ECF No. 175 ¶ 3. Mr. Prescott seemingly concedes this point in his reply. *See* ECF No. 178 ¶ 4. Accordingly, the court **DENIES as moot** the Motion to Strike.

*Motion to Quash.* Prior to the evidentiary hearing, Mr. Prescott issued a subpoena to Ms. Tone, ECF No. 158-1 ("Subpoena"), seeking records relating to communications between Ms. Tone and Defendants and their counsel, as well as any audio or video recordings of Mr. Prescott's deposition.[3] *Id.* at 5-6. Ms. Tone argues that the Subpoena should be quashed on several grounds. She asserts that it (1) imposes an undue burden or expense, (2) fails to provide reasonable time to comply, and (3) calls for privileged or otherwise non-discoverable materials. Motion to Quash at 2-3. Ms. Tone states that complying with the Subpoena would require her to retain her own counsel to advise her regarding her ethical duties to her client. *Id.* at 11.

While the court appreciates Mr. Prescott's desire to substantiate the basis for his sanctions request, this court has already heard extensive testimony at the evidentiary hearing and received numerous exhibits. *See* ECF Nos. 171, 174. The court is also mindful of the burden of complying with the Subpoena, which is heightened by the fact that, as an attorney, Ms. Tone's obligations to

---

[3] Ms. Tone states unequivocally that she does not possess any recordings of Mr. Prescott's deposition. Motion to Quash at 4.

4

her client would almost certainly require her to retain her own counsel in preparing a response to the Subpoena. The burden of this would be substantial, and given the materials already in the record, the court respectfully concludes that the burden of responding to the Subpoena is not proportional to the needs of the case. *Oransky v. Martin Marietta Materials, Inc.*, No. 18-cv-00266-MSK-NRN, 2018 WL 11514384, at *1 (D. Colo. Sept. 7, 2018) ("[A] subpoena is bound by the same [Federal Rule of Civil Procedure 26(b)] standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case."). Therefore, the court **GRANTS** the Motion to Quash and quashes the Subpoena issued to Ms. Tone.

Having disposed of the Motion to Strike and the Motion to Quash, the court considers the Motion for Sanctions.

## MOTION FOR SANCTIONS

### I. Legal Standard

Mr. Prescott cites several legal principles as the basis for his sanctions request. Because of the unique circumstances of the conduct alleged here, the court concludes that only this court's inherent authority would allow for the imposition of sanctions for the conduct alleged here.

***Colorado Criminal Statutes and Rules of Professional Conduct.*** Mr. Prescott argues that Defendants and their counsel have violated Colorado Revised Statute § 18-9-304 and the Colorado Rules of Professional Conduct, but Mr. Prescott never fully explains how these statutes and rules empower a federal district court to impose sanctions. Motion for Sanctions at 10-14.

The court does not believe that its role is to assess whether Defendants or their counsel committed a criminal act, especially in the context of a motion for sanctions in a civil suit.

5

Similarly, whether attorneys for Defendants breached their ethical obligations under the Colorado Rules of Professional Conduct is not a matter for this court to adjudicate. *Lobato v. Ford*, No. 05-cv-01437-LTB-CBS, 2007 WL 3342598, at *17 (D. Colo. Nov. 9, 2007) ("This court agrees that 'standards for professional conduct meant to be enforced by entities governing the practice of law cannot be enforced effectively by the court during litigation.'") (quoting *Evans v. Taylorsville City*, No. 2:06-cv-00631-TS-PMW, 2007 WL 2892629, at *2 (D. Utah Sept. 28, 2007)). Thus, neither Colorado criminal statutes nor the Colorado Rules of Professional Conduct provides authority for this court to sanction Defendants.

***Federal Rules of Civil Procedure.*** Mr. Prescott also cites Federal Rules of Civil Procedure 26(c)(1)(E) and 30(b)(3)(A) in making his sanctions request, but the court finds that the alleged conduct does not implicate either of these provisions.

As relevant here, Rule 26(c)(1) provides:

> A party or any person from whom discovery is sought may move for a protective order [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
>
> (E) designating the persons who may be present while the discovery is conducted[.]

Fed. R. Civ. P. 26(c)(1)(E). Mr. Prescott's theory is that, by failing to notify his counsel and himself of the virtual attendees, Defendants and their counsel deprived him of the ability to pursue a protective order under Rule 26(c)(1). Motion for Sanctions at 9-10. Again, Mr. Prescott fails to explain how this translates into authority for this court to sanction Defendants. By its plain terms, Rule 26(c)(1) authorizes a party to petition for a protective order, but nowhere does it mention sanctions. Indeed, the court has not located—and the Motion for Sanctions and reply

6

in support of that Motion, ECF No. 155, do not cite—a case where a court has sanctioned a defendant under the theory advanced by Mr. Prescott.

Rule 30(b)(3)(A) is similarly unavailing as a source for imposing sanctions:

> The party who notices the deposition must state in the notice the method for recording the testimony. Unless the court orders otherwise, testimony may be recorded by audio, audiovisual, or stenographic means. The noticing party bears the recording costs. Any party may arrange to transcribe a deposition.

Fed. R. Civ. P. 30(b)(3)(A). Mr. Prescott seizes on the Rule's language requiring that a deposition notice state how the deposition will be taken, Motion for Sanction at 9, but there is no mention of sanctions in this Rule.

To ensure a complete evaluation of Mr. Prescott's demand for sanctions, the court has reviewed other Federal Rules of Civil Procedure that do provide a mechanism for the court to impose sanctions, even though Mr. Prescott has not invoked these Rules in the Motion to Compel. Rule 30(d)(2) authorizes the court to "impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." However, as the interpretive case law makes clear, that provision is concerned with deterring dilatory deposition conduct that is not alleged to have occurred here. *See, e.g.*, *Carroll v. Allstate Fire & Cas. Ins. Co.*, No. 12-cv-00007-WJM-KLM, 2014 WL 859238, at *7 (D. Colo. Mar. 4, 2014) ("Generally this rule is used when someone other than the deponent, usually an attorney, is accused of interrupting the deposition[,]" and collecting cases discussing conduct warranting sanctions under Rule 30(d)(2)).

Neither would the sanction provision in Rule 37(b), which authorizes the imposition of sanctions for failure to comply with a court order, apply in this context. *Cronick v. Pryor*,

7

No. 20-cv-00457-CMA-MDB, 2024 WL 50194, at *3 (D. Colo. Jan. 4, 2024) (sanctions under Rule 37(b) are appropriate "when (1) a prior discovery order was issued, and (2) a party or witness failed to obey an order to provide or permit discovery") (internal quotations omitted). Mr. Prescott does not suggest that the offending conduct violated a court order, nor does this court discern any such violation.

Simply put, the conduct alleged to be sanctionable here does not fall within the scope of a Federal Rule of Civil Procedure authorizing the imposition of sanctions.

***Inherent Authority.*** Beyond any authority granted by rule or statute, federal courts possess certain "inherent powers" "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) (footnote omitted). Included in these inherent powers is the "ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). Because there is no rule or statute to guide a court's use of this inherent authority, the ability to sanction conduct must be employed with "restraint and discretion." *Id.* at 44.

"Sanctions under this Court's inherent authority require a finding of bad faith on the part of the attorney or party to be sanctioned." *Matios v. City of Loveland*, No. 21-cv-02194-WJM-NRN, 2022 WL 1015184, at *3 (D. Colo. Apr. 5, 2022) (citing *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246 (10th Cir. 2015) (upholding sanction award under the court's inherent authority finding bad faith by a party in failing to comply with order enforcing settlement)), *objections overruled*, 2022 WL 6156867 (D. Colo. Oct. 7, 2022), *aff'd*, No. 22-1394, 2023 WL 4145905 (10th Cir. June 23, 2023); *Chambers*, 501 U.S. at 50-51 (holding that district court did not abuse its discretion "in resorting to the inherent power in the circumstances of this case,"

where the bad faith conduct "was beyond the reach of the Rules . . . and the conduct sanctionable under the Rules was intertwined within conduct that only the inherent power could address"); *Williams v. Denmar LLC*, No. 21-cv-01431-DDD-NRN, 2022 WL 15517045, at *5 (D. Colo. Oct. 27, 2022) ("Unlike Rule 11, sanctions under the Court's inherent authority appear to require a finding of bad faith on the part of the attorney or pro se party to be sanctioned.") (citation omitted); *EEOC v. Original Honeybaked Ham Co. of Georgia*, No. 11-cv-02560-MSK-MEH, 2013 WL 752912, at *2 (D. Colo. Feb. 27, 2013) (recognizing that "[b]oth Rule 11 sanctions and the Court's inherent authority generally require a finding of bad faith") (citing *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007)).

As one judge in this District has put it, "[t]he catchphrase used by the Tenth Circuit is that a court's 'inherent authority to sanction' requires a party or attorney who 'has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Original Honeybaked Ham Co.*, 2013 WL 752912, at *2 n.1 (quoting *Hutchinson v. Pfeil*, 208 F.3d 1180, 1186 (10th Cir. 2000) (quoting *Chambers*, 501 U.S. at 45-46)). The inherent power to sanction attorney or party misconduct includes the power to enter a default judgment, as Mr. Prescott has requested here. *See, e.g.*, *Chambers*, 501 U.S. at 44 ("Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court."); *Henderson v. Aldana*, No. 23-2612, 2025 WL 722116, at *3 (7th Cir. Mar. 6, 2025) ("A district court has the inherent power to sanction a party with default judgment if it litigates in bad faith.") (citation omitted); *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1475 (D.C. Cir. 1995) ("The inherent power encompasses the power to sanction attorney or party

9

misconduct, and includes the power to enter a default judgment.") (citations omitted).[4]

Therefore, the court proceeds to assess Mr. Prescott's request for sanctions in accordance with its inherent power to fashion an appropriate sanction for conduct that abuses the judicial process.

## II.   Analysis of the Motion for Sanctions

Having heard nearly twelve hours of testimony and having thoroughly considered the parties' briefing and the applicable law, the court respectfully concludes that there is insufficient evidence to find bad faith on the part of Defendants or their attorneys. The court finds no indication of any conduct that sinks to the level of the vexatious, wanton, or oppressive so as to evince bad faith, regardless of how frustrated and surprised Mr. Prescott and his attorneys may

---

[4] *See also, e.g.*, *Miller v. First United Bank & Trust Co.*, No. CIV-22-185-F, 2023 WL 2564009, at *3 (W.D. Okla. Mar. 17, 2023) ("The court's inherent power encompasses the power to sanction either party misconduct or attorney misconduct, and includes the power to enter a default judgment or a lesser sanction.") (citing *Chambers*, 501 U.S. at 43-45); *Millsap v. McDonnell Douglas Corp.*, 162 F. Supp. 2d 1262, 1308 (N.D. Okla. 2001)); *Paavola v. Hope Vill.*, No. CV 19-1608 (JDB), 2021 WL 4033101, at *3 n.4 (D.D.C. Sept. 4, 2021) (recognizing that "Courts may award several types of sanctions pursuant to their inherent authority. These include attorneys' fees and costs, contempt citations, disciplinary sanctions, adverse inference instructions, orders precluding the admission of evidence, and default judgments. *See Shepherd*, 62 F.3d at 1475 (citing Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 28(A) (2d ed. 1994)). Although this Court has an independent obligation to determine the most appropriate type of sanction based on the facts presented, *see id.* at 1479, for the purposes of assessing the instant motion, which will be denied without prejudice, the Court will evaluate only the specific sanctions discussed by the parties: an adverse inference instruction and an award of attorneys' fees and costs."); *Advanced Magnesium Alloys Corp. v. Dery*, No. 1:20-cv-02247-RLY-MJD, 2024 WL 244932, at *11 (S.D. Ind. Jan. 23, 2024) ("A district court may impose sanctions pursuant to its inherent authority where a party has willfully abused the judicial process or otherwise conducted litigation in bad faith. The court's inherent power to sanction misconduct includes the power to enter a default judgment against the offending party.") (internal citations and quotations omitted).

10

have been by the revelation that Mr. Prescott's ex-wife and her attorney had listened in on his deposition.

In declining to find bad faith, the court has carefully scrutinized the hearing testimony of Mr. O'Donnell, the person accused of having surreptitiously facilitated the presence of Ms. Prescott and Ms. Tone at the deposition. Mr. O'Donnell testified that he announced there would be observers at the deposition—including Ms. Prescott and Ms. Tone—in the presence of the court reporter, Mr. Prescott, and Hillary Bernhardt, one of Mr. Prescott's attorneys. Tr.II 114:13-16, 115:12-17, 119:10-13. Mr. Prescott and Ms. Bernhardt deny this, maintaining that they never heard such a statement from Mr. O'Donnell. The statement allegedly was made before the parties went on the record, and thus no audio recording or written transcription could have been made. This court cannot know with certainty exactly what Mr. O'Donnell said, or what Mr. Prescott and Ms. Bernhardt heard or should have heard. But the court is not prepared to find that Mr. O'Donnell—or any other person from the Lane Law firm—presented false testimony to the court.

In their steadfast disagreement on this issue, the parties seemingly fail to consider that their competing renditions of the events on the day of the deposition are not mutually exclusive. Mr. O'Donnell counsel could have made a statement directed towards Mr. Prescott and his attorney to let them know of the virtual attendees. And his statement easily might have gone unheard and was lost in the hustle and bustle of preparing for a deposition. This possibility strikes the court as highly plausible given the description of the lead-up to the deposition. Based on the hearing testimony, Mr. Prescott and his attorneys were late to the deposition, and upon their arrival, were attempting to get settled in for what they anticipated would be—and truly

11

was—a long and evidently contentious day of questioning. In addition to the deposition itself, counsel for both sides were also conferring about an issue concerning responses to written discovery. Each witness testified that people were entering and exiting the conference room before the deposition as they prepared for their particular role that day. All that to say, the cumulative, and consistent, testimony of the witnesses describes a setting in which a single comment could easily have been missed.

The court further observes that, if this were a premeditated and covert attempt to spy on Mr. Prescott's privileged conversations, it was done in a clumsy manner that was easily uncovered. It is uncontested that, before the deposition, Mr. O'Donnell gave the court reporter a note listing the names of the individuals—including Ms. Prescott and Ms. Tone—who would be observing the deposition remotely. *See* ECF No. 171-1 at 3.[5] Mr. O'Donnell surely knew that the court reporter intended to include those names in the deposition transcript. And while it likely goes without saying, Mr. O'Donnell also would have undoubtedly expected Mr. Prescott or his attorneys to review the deposition transcript soon after it was made available. Any reasonable person, then, would have anticipated that informing the court reporter about the presence of Ms. Prescott and her attorney would mean that the fact of their attendance would eventually make its way back to Mr. Prescott and his attorneys. That Mr. O'Donnell acted with so little concern for that inevitable discovery is at odds with the idea that he, or anyone else associated with the Lane Law Firm or Defendants, was motivated by a purpose to trick or deceive his opposing counsel

---

[5] The note Mr. O'Donnell handed to the court reporter also listed James Martinez and Roxanne Lattin, ECF No. 171-1 at 3, but their names were crossed through by the court reporter after they did not appear.

into revealing privileged communications.

That conclusion is bolstered by the fact that the chosen means of allegedly spying on Mr. Prescott was in no way geared toward maintaining secrecy. Ms. Prescott and her attorney attended the deposition virtually, via a laptop placed on top of a credenza in the room where the deposition was held and in very close proximity to Mr. Prescott and his attorneys. Whether or not Mr. Prescott and his attorneys could clearly see the laptop's screen, by all accounts the device itself was in no way hidden. Given that the deposition took place in defense counsel's offices and counsel had ample time for advance planning, they surely could have contrived a more sophisticated means of spying on Mr. Prescott than by way of a computer placed in the open for all to see and handle as they passed by.

The court's finding neither Mr. O'Donnell personally, nor anyone else associated with Defendants, operated in bad faith is also informed by the evidence that Mr. Prescott, his attorneys, and the other witnesses did *not* present. Importantly, there was no testimony that defense counsel attempted to usher Mr. Prescott and his attorneys into the conference room and confine them there at all times so that their most private conversations could be picked up on the laptop. Mr. Prescott and his attorneys testified that they engaged in potentially privileged conversations both inside and outside of the conference room. *See* Tr.I 54:24-55:2; Tr.II 130:17-22. Put another way, there was no testimony indicating some concerted effort by defense counsel to ensure that Mr. Prescott's privileged conversations were always within virtual earshot of Ms. Prescott and her attorney.

This court in no way seeks to diminish the fact that Mr. Prescott and his counsel were genuinely shocked and extremely upset to discover, weeks later, that Mr. Prescott's ex-wife and

13

her attorney were present at his deposition. But the court is obliged to observe in assessing the sanctions question that Mr. Prescott and his attorneys have come forward with no evidence demonstrating that Ms. Prescott's possible eavesdropping on their privileged conversations has resulted in any prejudice to Mr. Prescott or negatively affected his position in this case or any other legal proceeding. One explanation for this could be that Ms. Prescott never actually heard any privileged information. Regardless, when weighing whether to impose sanctions, the court takes into account the absence of prejudice to Mr. Prescott.

On this record, the court does not find that Mr. O'Donnell, or any other person associated with the Lane Law Firm, acted "in bad faith, vexatiously, wantonly, or for oppressive reasons," *see Original Honeybaked Ham Co.*, 2013 WL 752912, at *2 n.1, and therefore declines to find that any conduct that rises to a level that is sanctionable under the applicable rules governing the litigation process. To be sure, defense counsel might have done things differently. In particular, clearer communications might have avoided the circumstances that led to this unfortunate dispute and the need for this court's involvement; indeed, counsel admitted as much at the evidentiary hearing. As Mr. O'Donnell aptly put it: "There's a lot of things I could have done differently, but it's all hindsight. What am I going to do in the future? I already know. But I can't go back and change what occurred." Tr.II 122:16-19. Neither will the undersigned use the advantage of hindsight to assign blame and impose sanctions for mistakes which, the court finds, were not motivated by bad faith. Accordingly, the Motion for Sanctions, ECF No. 149, is **DENIED**.

### III.   Order for Settlement Conference

Having spent many hours evaluating the motions addressed in this order and the history

of this action overall, the court finds that at this juncture the interests of justice will be facilitated by a settlement conference. The undersigned believes that a two-day conference, which the court will conduct at a to-be-determined location in southern Colorado in closer proximity to the parties, will be most effective. A telephonic status conference to discuss the logistics of the settlement conference is set for **May 2, 2025, at 11:30 a.m.** In advance of that conference, the parties are directed to confer and to be prepared to propose dates for a settlement conference in accordance with these directives.

## CONCLUSION

Consistent with the foregoing analysis, the court respectfully **ORDERS** as follows:

(1) The Motion for Sanctions, ECF No. 149, is **DENIED**;

(2) The Motion to Strike, ECF No. 156, **is DENIED as moot**; and

(3) The Motion to Quash Subpoena, ECF No. 158, is **GRANTED**.

It is further **ORDERED** that a telephonic status conference is set for **May 2, 2025, at 11:30 a.m.**, The parties shall attend by calling 571-353-2301, Guest meeting ID- 868150043. All attendees are requested to mute their phone when not speaking and avoid speaker phone and bluetooth connections.[6]

---

[6] Rule 72 of the Federal Rules of Civil Procedure provides that within fourteen (14) days after service of a Magistrate Judge's order or recommendation, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. §§ 636(b)(1)(A), (B); Fed. R. Civ. P. 72(a), (b). Failure to make any such objection will result in a waiver of the right to appeal the Magistrate Judge's order or recommendation. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 783 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders); *but see Morales-Fernandez v. INS*, 418 F.3d 1116, 1119, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require

15

DATED: April 27, 2025                                BY THE COURT:

                                                     _____
                                                     Susan Prose
                                                     United States Magistrate Judge

---

review, including when a "pro se litigant has not been informed of the time period for objecting and the consequences of failing to object").